[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in two counts, the first sounding in negligence, the second sounding in breach of contract brought by plaintiff Cellu Tissue Corporation ("Cellu") Manufacturing Company against the defendant Blake Equipment Company ("Blake") a boiler repair company, to recover damages arising from a boiler failure on August 26, 1990. Blake had denied the allegations and asserted a special defense of contributory negligence. Trial took place in this court on October 25 and 26, 1994 with closing arguments made on November 10, 1994, at which time each party filed proposed findings of fact and law. CT Page 2465
The following facts are found to be supported by the evidence.
In August, 1990, Cellu used two steam boilers in its tissue paper manufacturing business. In the week prior to August 25, 1990 Boiler No. 1 was shut down for annual inspection and repairs. On Wednesday, August 22, Michael Maughan an employee of Cellu called Blake's office to report a problem with Boiler No. 2 in that it was automatically shutting down because of low water level.
On the morning of August 23, Blake's employees came to Cellu's premises to make repairs, found that the water level in Boiler No. 2 was not keeping up and left a service report indicating that the modulating motor on the feed water valve was not opening up all the way, that the cam had been adjusted and that the feed control arm unit appeared to be working. In response to another call from Cellu that day, Blake's employees came to Cellu again and found that the Jordan feed water valve on Boiler No. 2 was not working and changed the switch assembly. Ordinarily installing the switch assembly requires shutting down the Boiler but because Boiler No. 2 was the only one in operation, Plaintiff's employees did not want to shut it and Blake's employee, Shingleton, "jumpered" the wires to install the switch. He then observed that the stroke on the feedwater valve and motor was not functioning properly and concluded that the modulating motor might be defective and needed to be changed. Because Blake did not have the motor in stock, a new motor was ordered and Cellu's employees were told it would be installed on arrival. Blake's employees knew there was still a problem with the low water cut-off on the Boiler but did not undertake the full tests necessary to pin point the problem because Cellu's employees did not wish to shut down its only operating boiler. Before Shingleton left he cautioned the Cellu's employees to visually check the water level of Boiler No. 2 regularly.
On Friday, August 24, Blake called Cellu's office to advise them that the new modulating motor had arrived and it could be installed that day. Mr. Maughan continued to advise him that Boiler No. 2 was necessary for production, because Boiler No. 1 was still out and Blake should wait until Monday to install the motor. Over the weekend Maughan advised Cellu's machine tenders to watch the water levels on the Boiler No. 2. On Saturday, August 25, Boiler No. 1 was put back into service. Boiler No. 2 was placed on manual, low fire, and the bypass and main feedwater CT Page 2466 valves were shut, leaving only the manual feed valves left as the only way for water to get into the boiler. Various machine tenders of the plaintiff monitored Boiler No. 2 over the weekend, some less intensively than others.
On Sunday, August 26 Kevin Riley an employee of Cellu found a hot spot on Boiler No. 2 which had now been placed on auto. He placed the boiler on low fire manual, which then started making trouble sounds. He then observed water leaking from the front and rear door and shut Boiler No. 2 down.
Subsequent inspection revealed that the inside of Boiler No. 2 had suffered serious damage requiring repairs in the reasonable amount of $58,073.27.
A good deal of the evidence offered at trial, including the testimony of the expert witnesses focused on various mechanical and safety features of the boiler operation in an attempt to prove the exact cause of the boiler burnout, but it is clear that the boiler damage occurred because there was an insufficient level of water maintained in the system to protect the boiler from over heating.
Cellu claims that Blake is liable for the damages because it failed to make needed repairs in a workmanlike manner.
Blake claims that Cellu is responsible for the damage because it negligently failed to permit the boiler to be shut down and to monitor the boiler adequately.
We find that Plaintiff has not sustained its burden of proof on its claim of breach of contract.
We find that Blake, as an expert repair service which had previously serviced Cellu's boilers was negligent in failing to run a complete test of Boiler No. 2 prior to the weekend to pinpoint the problem. We find that Blake was further negligent in failing to advise Cellu in specific enough language and in writing, particularly in view of the facts that a new modulating motor had been ordered and there might be a problem with the primary water cut-off, that operation of Boiler No. 2 could not be safely continued without complete twenty four hour surveillance of the water level so that an adequate water level could be maintained manually if necessary. CT Page 2467
We find that Cellu was contributorily negligent in failing to permit the Boiler to be shut down so that a full inspection could be made prior to the weekend and, thereafter, knowing that a new part had been ordered to make certain that twenty four hour surveillance of the boiler was maintained so that the water level could be maintained manually if necessary. We note that the Cellu employees dealing with Blake, as well as some of the boiler tenders, were highly trained in the operation of Boilers and that at least one was a former employee of Blake.
Both the negligence of Blake and the contributory negligence of Cellu were substantial factors and proximate causes of the damage to Boiler No 2.
We find that the comparative negligence of the defendant was 50%.
Judgment is entered for the plaintiff for 50% of the total damages, in the net amount of $29,036.64.
Wagner, J.